151 P.3d 812

Ryan DAVIDSON, an individual, dba The
Liberty Lobby of Idaho, and The Liberty
Lobby of Idaho, an unincorporated asso-
ciation, Petitioners–Appellants,

and

Robert Blakeley, an individual,
Petitioner,

v.

Janis WRIGHT, in her capacity
as The Sun Valley City
Clerk, Respondent.

The City of Sun Valley, Idaho,
a municipal corporation,
Plaintiff–Respondent,

v.

Ryan Davidson, an individual, dba The
Liberty Lobby of Idaho, and The Liberty
Lobby of Idaho, an unincorporated asso-
ciation, Defendants–Appellants,

and

Robert Blakeley, Defendant.

Ryan Davidson, an individual, dba The
Liberty Lobby of Idaho, and The Liberty
Lobby of Idaho, an unincorporated asso-
ciation, Petitioners,

and

Robert Blakeley, an individual,
Petitioner–Appellant,

v.

Janis Wright, in her capacity as The Sun
Valley City Clerk, Respondent.

The City of Sun Valley, Idaho,
a municipal corporation,
Plaintiff–Respondent,

v.

Ryan Davidson, an individual, dba The
Liberty Lobby of Idaho, and The Liberty
Lobby of Idaho, an unincorporated asso-
ciation, Defendants,

and

Robert Blakeley, Defendant–Appellant.

Nos. 31792, 31793.

Supreme Court of Idaho,
Boise, May 2006 Term.

Sept. 27, 2006.

Rehearing Denied Jan. 18, 2007.

Ryan T. Davidson, Garden City, for appellant Liberty Lobby of Idaho in case 31792. Ryan L. Davidson argued.

Robert Blakeley, Hailey, pro se appellant in case 31793.

Hawley Troxell Ennis & Hawley, Ketchum, for respondents. Rand L. Peebles and Adam Bruno King argued.

BURDICK, Justice.

Ryan Davidson, Robert Blakeley and the Liberty Lobby of Idaho [1] (collectively, Davidson) appeal from a district court ruling permitting the City of Sun Valley (the City) to refuse to approve Davidson's petition for a city initiative. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Davidson presented an initiative petition with twenty-two initial signatures to Janis Wright, the Sun Valley City Clerk (the City Clerk or Clerk). The presentation of those first twenty-two signatures was in order for the City Clerk to review the petition for technical compliance regarding matters such as the type of paper used and the number of lines per page. *See* Sun Valley City Code § 1–7–2–3. Davidson's initiative sought to permit the regulated growth, sale and use of marijuana in the City, as well as to make enforcement of private adult marijuana offenses the City's lowest law enforcement priority and to direct the City to advocate for changes in state marijuana laws. Relying on advice from the City Attorney, the City Clerk rejected the petition, asserting that the proposed initiative was contrary

---

1. It does not appear the Liberty Lobby of Idaho is affiliated with the national organization also known as the Liberty Lobby.

to state law and was therefore outside the scope of the City's initiative process.

Arguing that the City Clerk was without authority to rule on the legality of the substance of an initiative petition, Davidson brought suit in district court. The City then sued Davidson seeking declaratory relief, and the two actions were consolidated. The district court granted summary judgment in favor of the City and awarded the City costs and a portion of its attorney fees.

This appeal followed.

## II. ANALYSIS

In Davidson's initial suit following the City Clerk's refusal to process his model petition, he argued the City Clerk was without authority to rule on the legality of the substance of his proposed initiative. Davidson filed his suit pursuant to I.C. § 50–406, which provides for a person aggrieved by a city clerk's act or failure to act under any election law to bring the matter to district court. As Davidson's suit under I.C. § 50–406 presents a narrow question independent of the declaratory judgment action later filed by the City, we begin by considering it separately.

### A. Davidson's Suit Against The City

■ When considering Davidson's suit against the City Clerk, the question of whether Davidson's proposed initiative was a proper subject for a city petition is not yet before this Court. Instead, the issue presented by Davidson's suit is whether the City Clerk is vested with the authority to determine the constitutionality of a proposed initiative and the discretion to perform or decline to perform her ministerial duties based upon that determination. In other words, the question is not whether this Court agrees with the City Clerk's evaluation of the constitutionality of Davidson's proposed initiative, but whether the City Clerk was empowered to make such a determination.

Davidson directs this Court's attention to the relevant passages in the Sun Valley City Code. The City provides by ordinance that one wishing to place an initiative on the ballot must first present to the City Clerk a model petition containing the signatures of at least twenty eligible electors. Sun Valley City Code § 1–7–2–3(C). In pertinent part the ordinance states that then the City Clerk "shall immediately examine the petition and specify the form and kind and size of paper on which the petition shall be printed and circulated for further signatures." Once this pre-certification examination has been done, the ordinance further provides:

> The City Clerk shall indicate in writing on the petition that he has approved it *as to form* and the Clerk shall inform the person or persons [under] whose authority the petition is to be circulated, in writing, that the petition must be perfected with the required number of certified signatures within sixty (60) days following the date of approval *as to form.* (Emphasis added).

Sun Valley City Code § 1–7–2–2 states that in order for an initiative to be placed on the ballot its backers must present to the City Clerk signatures equal to "at least twenty percent (20%) of the total number of voters registered to vote in the last general election in the City." [2]

In short, the City requires the sponsors of a proposed initiative to present to the City Clerk a model petition containing the signatures of at least twenty electors. The City Clerk then examines the petition, permitting the Clerk to correct errors "as to form" before the backers of the initiative attempt to collect signatures in the larger numbers required to secure ballot access.

This Court has never directly addressed the question of whether a city clerk has the implied power to reject a proposed initiative based on the clerk's or the city's view of its constitutional merits. As a general rule, whether a proposed ordinance may be adopted by way of initiative is commonly

---

**2.** Sun Valley City Code § 1–7–2–2 purports to require a number of signatures "equal to at least twenty percent (20%) of the total number of voters *registered to vote* at the last general election in the City" (emphasis added). Idaho law, however, requires each city in the state to pro-vide an initiative process for which ballot access requires the signatures of no more than twenty percent "of the total number of electors *who cast votes* at the last general election in the city." I.C. § 50–501 (emphasis added).

viewed as a judicial matter. 5 Eugene McQuillin, The Law of Municipal Corporations § 16:54 (3rd ed., rev.vol.2004). Where other jurisdictions have considered the question, they have ruled that city officials cannot refuse to perform their ministerial duties based on their own evaluation of the substance of a proposed initiative. *See, e.g., State ex. rel. Althouse v. City of Madison,* 79 Wis.2d 97, 255 N.W.2d 449, 452 (1977) (stating that "it is not the prerogative of the common council to reach a conclusion with respect to the unconstitutionality or invalidity of the proposed ordinance"); *City of Rocky Ford v. Brown,* 133 Colo. 262, 293 P.2d 974, 976 (1956) ("No discretion rests with administrative officials to pass upon the validity of an act proposed by the people"); *Coleman v. Bench,* 96 Utah 143, 84 P.2d 412, 414 (1938) ("An officer whose duty it is to act ministerially cannot be the judge of what may in the end be or be not constitutional and gamble on this court's not issuing the mandamus.... [I]t is not his province to guess at what the action may be on his refusal to act. His duty is not affected by what we might do if a petition to compel him to do his duty were filed").

When viewing related matters, this Court has taken a restrictive view of the discretion left to local administrative officers where ministerial duties have been clearly spelled out. For example, in *Wycoff v. Strong,* the city clerk of Moscow refused to tender money to a private firm as directed by the city council, protesting he believed that "said claim was and is illegal and void." 26 Idaho 502, 503, 144 P. 341, 341 (1914). In granting a writ of mandate compelling the city clerk to perform his duty, this Court noted that the act required of the clerk was a ministerial duty of his office that did not invoke the exercise of discretion. *Id.* Similarly, in *Miller v. Davenport,* a case involving a county auditor's refusal to determine on his own authority the eligibility of a candidate for public office, this Court wrote that "County auditors, so far as arranging the official ballots are concerned, act in a clerical capacity, and are not clothed with judicial or quasi judicial power.... They have no discretion in

the matter. They cannot go behind the certificates of nomination and inquire into the eligibility of candidates." 8 Idaho 593, 594–95, 70 P. 610, 610 (1902); *see also Kerley v. Wetherell,* 61 Idaho 31, 46–47, 96 P.2d 503, 510–11 (1939).

The City contends it has sweeping authority granted under I.C. § 50–301 to "exercise all powers and perform all functions of local self-government in city affairs as are not specifically prohibited by or in conflict with the general laws or the constitution of the state of Idaho." The City notes that not every such power is stated expressly; many are implied within the legislature's general grant of authority. These implied powers, asserts the City, permit the City Clerk to determine the constitutionality of proposed initiatives and to reject those that do not pass muster.

Whatever the City's powers, however, the City is obligated to follow its own ordinances. Sun Valley City Code § 1–7–2–3 spells out in detail the ministerial duties of the City Clerk when processing initiative petitions. Indeed, the ordinance expressly limits the Clerk's review of the petitions to one "as to form," and lists specific considerations such as the size and quality of paper employed, the number of lines for signatures, and the amount of space to be left in the margins. Nothing in Sun Valley City Code § 1–7–2–3 expressly or impliedly grants the City Clerk the discretion to go behind the petitions to inquire or rule on the validity or constitutionality of a proposed initiative.

The City protests that if the Clerk cannot halt unconstitutional initiatives any group could submit petitions for any number of outlandish causes. While it is true that many such initiatives could be proposed, sorting through the substance of proposed initiatives to separate the wheat from the chaff is not the role of the City Clerk.[3] The proper checks on the power of initiative are the voting public and the courts, and a city council retains the power to repeal or amend ill-advised ordinances passed by direct legislation.

---

**3.** We express no opinion as to whether a city attorney could issue advisory opinions under a structure analogous to those found in I.C. §§ 31–717 and 34–1809.

The City Clerk, even when acting on the advice of the City Attorney, lacked the authority to rule on the constitutionality of Davidson's proposed initiative. We therefore reverse the district court's determination that the City Clerk was not obligated to complete her ministerial duty as described in Sun Valley City Code § 1–7–2–3.

## B. The City's Declaratory Judgment Action

■ The City's declaratory judgment action asks a broader question than the earlier suit Davidson filed against the City Clerk. The declaratory judgment action asks for a ruling on whether the substance of Davidson's proposed ordinance could be passed by initiative. The district court decided in favor of the City, ruling that Davidson's initiative conflicted with the general laws of the state and therefore was outside the proper scope of a city initiative.

■ Our review of the district court's decision does not, however, reach the substance of the City's suit because the issue it raises is not presently ripe for adjudication. "A prerequisite to a declaratory judgment action is an actual or justiciable controversy." *Weldon v. Bonner County Tax Coalition*, 124 Idaho 31, 36, 855 P.2d 868, 873 (1993). The doctrine of justiciability can be divided into several subcategories, including that of standing and ripeness. *Id.* Ripeness is that part of justiciability that "asks whether there is any need for court action at the present time." *Gibbons v. Cenarrusa*, 140 Idaho 316, 317, 92 P.3d 1063, 1064 (2002).

■ This Court has described a justiciable controversy as one that is

distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Weldon*, 124 Idaho at 36, 855 P.2d at 873 (quoting *Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984)). Idaho has adopted the constitutionally based federal justiciability standard. *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002). Idaho courts are authorized under I.C. § 10–1201 to render declaratory judgments under certain circumstances, but even actions filed pursuant to that statute must present an actual or justiciable controversy in order to satisfy federal constitutional justiciability requirements. *Noh*, 137 Idaho at 801, 53 P.3d at 1220.

In the recent case of *City of Boise v. Keep the Commandments Coalition*, this Court addressed the question of whether Idaho courts will consider pre-election challenges to a proposed initiative. *City of Boise v. Keep the Commandments Coalition*, No. 84, 143 Idaho 254, 141 P.3d 1123 (2006). Prior to our decision in *Keep the Commandments Coalition*, we had distinguished between two types of challenges to an initiative. 143 Idaho at 255, 141 P.3d at 1124. The first type, illustrated in *Noh*, occurred when an initiative was challenged as being substantively unconstitutional. 137 Idaho at 802–03, 53 P.3d at 1221–22. In those circumstances we held there was no justiciable controversy unless or until the questioned initiative was passed by the voters. *Id.*

The second sort of challenge, typified by *Gumprecht v. City of Coeur d'Alene*, 104 Idaho 615, 661 P.2d 1214 (1983), and *Weldon*, 124 Idaho 31, 855 P.2d 868, involved situations where there was either (1) a "challenge to the process by which the initiative has been qualified to be on the ballot," or (2) a challenge alleging "the subject matter [was] beyond the reach of an initiative." *Noh*, 137 Idaho at 802–03, 53 P.3d at 1221–22. Idaho courts would formerly undertake pre-election review under either of those circumstances. *See id.* The reasoning was that if the required procedural steps were not followed, or if the subject matter was beyond the reach of an initiative, the government unit holding the election would be without the jurisdiction to do so. *See Weldon*, 124 Idaho at 37, 855 P.2d at 874. Rather than, as in many instances, there being no justiciable controversy until passage by the voters brought up the prob-

lem of enforcing an invalid law, if there was no jurisdiction for the government unit holding the election to consider the question by way of initiative, the controversy would arise as soon as the initiative was certified for election. *See id.* Under that reasoning the holding of the election would itself be the harm, rather than stemming, as in other cases, from the enforcement of an allegedly unconstitutional initiative following passage by the voters.

■ In *Keep the Commandments Coalition*, the City of Boise argued that because a challenged initiative sought to place a specific monument in a city park, it proposed an administrative rather than a legislative act and was therefore outside the scope of the initiative power. *Keep the Commandments Coalition*, 143 Idaho 254, 256–57, 141 P.3d 1123, 1125–26. Employing that argument, the City of Boise won a favorable ruling in district court. On review, we reversed the district court's ruling and held that because the proposed initiative would remain only a proposal unless passed by the voters the subject was not ripe for resolution and might never become ripe. *Id.* at 257, 141 P.3d at 1126. In doing so, this Court expanded *Noh* to preclude not only pre-election substantive challenges to the constitutionality of an initiative as before, but also to bar pre-election review of whether the subject matter of an initiative comes within the scope of the initiative power. *Id.* Pre-election review of a challenged initiative remains appropriate where the "procedures for placing the initiative on the ballot were not followed." *Idaho Watersheds Project v. State Board of Land Commissioners*, 133 Idaho 55, 58, 982 P.2d 358, 361 (1999); *see also Keep the Commandments Coalition*, 143 Idaho at 257, 141 P.3d at 1126. (stating that "the Court will not interrupt the consideration of a *properly qualified* initiative" (emphasis added)).[4] To the extent that our holding in *Keep the Commandments Coalition* was inconsistent with *Weldon, Gumprecht*, and *Perrault v. Robinson*, 29 Idaho 267, 158 P. 1074 (1916), an earlier case, those decisions were expressly

overruled. *Keep the Commandments Coalition*, 143 Idaho at 257, 141 P.3d at 1126.

Our decision in *Keep the Commandments Coalition* is directly on point. Here, as in *Keep the Commandments Coalition*, Davidson's initiative has been challenged as concerning matters outside the scope of a city initiative, and has yet to face the voters. Indeed, Davidson was halted even before he was able to acquire the necessary signatures to secure ballot access. The substance of Davidson's proposed initiative will not be ripe for judicial review unless or until passage by the voters brings up the problem of enforcing a potentially invalid law. *See Id.* Until then, any judgment on the merits of this case would be an academic discussion on a hypothetical set of facts. Federal justiciability standards do not permit the courts to rule on such questions. *Noh*, 137 Idaho at 802, 53 P.3d at 1221. Accordingly, we reverse the order and judgment issued below regarding the City's declaratory judgment action.

In doing so, we are not signaling any sort of endorsement of the constitutionality or wisdom of Davidson's proposed initiative. Instead, we note that our decision results from prior precedent and the court system's constitutionally based inability to adjudicate disputes before a justiciable controversy has ripened.

## C. Attorney Fees

■ The City requests attorney fees on appeal pursuant to I.C. §§ 12–117, 12–121, I.R.C.P. 11(a) and I.A.R. 41. As the City does not prevail in this action it is not entitled to an award of attorney fees. Davidson requests attorney fees on appeal pursuant to I.C. § 12–117. Idaho Code § 12–117 provides that in an administrative or civil judicial proceeding against a state agency, a county, or a city, the court may award reasonable attorney fees to the prevailing party if the opposing party acted without a reasonable basis in fact or law. I.C. § 12–117; *Kootenai Med. Ctr. v. Bonner County Commr's.*, 141 Idaho 7, 10–11, 105 P.3d 667, 670–71 (2004). Here, we note that this litiga-

---

4. Neither here nor in *Keep the Commandments Coalition* has this Court considered whether an initiative is subject to pre-election review for embracing multiple subjects or matters outside its title. *See Idaho Const.* Art III, § 16.

tion arose prior to our recent decision in *Keep the Commandments Coalition,* and in light of that the City's actions were not without a reasonable basis in fact or law. We therefore decline to award attorney fees to Davidson.[5]

### III. CONCLUSION

The district court's determination that the City Clerk was not obligated to perform her ministerial duties under Sun Valley City Code § 1–7–2–3 is reversed. We also reverse the district court's order and judgment regarding the City's declaratory judgment action, including the award of costs and attorney fees below, as no justiciable controversy yet existed on the question raised by the City. Costs are awarded to the Appellant.

Justices EISMANN and JONES concur.

SCHROEDER, C.J., specially concurring.

I agree with the reasoning and result of the Court's decision and write only to emphasize that the decision in no way sanctions the legitimacy of the initiative that is proposed. If enough signatures are gathered to qualify the initiative for the ballot, and if the initiative then passes, significant portions of it will clearly contravene State law and be invalid. Time, effort, and money will have been wasted, except to the extent that lawmakers will have the opinion of a small segment of the State's qualified electors. This is as clear a case for judicial intervention into the process to prevent the wasted time, effort, and money as the Court is likely to see. Nonetheless the decision to allow the process to play itself out without judicial intervention is appropriate. The petitioners have a right to seek the voters' views, and if enough voters think the matter should be on the ballot, they have the right to express their views formally, even if that expression is a futile, costly, and foolish effort.

TROUT, J. CONCURRING IN THE RESULT OF PARTS II B and C.

I concur in all but Parts II B and C of the Court's opinion and concur in the result of those sections. I write only to point out that at least parts of Davidson's proposed initiative are properly characterized as "legislative" matters and are therefore appropriately the subject for an initiative. Further, Davidson is not entitled to attorney fees because he is a pro se litigant. *See Bowles v. Pro Indiviso, Inc.,* 132 Idaho 371, 377, 973 P.2d 142, 147 (1999).

---

**5.** As Davidson was not represented by counsel, he did not incur attorney fees in this action. He nonetheless argues that attorney fees under I.C. § 12–117 serve as a sanction and a deterrent to frivolous lawsuits, and equal protection demands that litigants who cannot afford counsel should not be denied the benefits—both monetary and tactical—that are afforded by I.C. § 12–117. In this instance, however, because the City's actions were not unreasonable it is not necessary for us to address Davidson's argument.