## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 40573

ABC AGRA, LLC, an Idaho limited liability company,

    Plaintiff-Appellant,

v.

CRITICAL ACCESS GROUP, INC., a Minnesota non-profit corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Twin Falls, June 2014 Term

2014 Opinion No. 80

Filed: August 6, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Robert J. Elgee, District Judge.

District court dismissal of declaratory judgment, affirmed.

Robertson & Slette, PLLC, Twin Falls, for appellant. Gary D. Slette argued.

Givens Pursley, LLP, Boise, for respondent. Martin C. Hendrickson argued.

---

BURDICK, Chief Justice

This appeal arises out of ABC Agra, LLC's ("ABC") action seeking a declaratory judgment against Critical Access Group, Inc. ("CAG") regarding the enforceability of a real property use restriction. Because there were no existing or proposed uses that implicated the restriction, the district court determined that the claim was not ripe and granted CAG's 12(b)(6) motion to dismiss. We affirm this dismissal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not at issue because CAG accepts the facts ABC alleged in its complaint as true for the purposes of its 12(b)(6) motion and this appeal.

ABC is the developer of Crossroads Point Business Center PUD (the "PUD"), a large scale commercial planned unit development located at the intersection of Interstate 84 and Highway 93 in Jerome County, Idaho. In 2007, St. Benedict's, the local hospital in Jerome, concluded that its aging hospital facility required a replacement and so executed an option

1

agreement to purchase property from ABC located within the PUD.[1] The option agreement provided that St. Benedict's had an option to purchase Lot 6 in the PUD, and that if they elected to purchase that property, ABC would gift them Lots 7 and 8 to facilitate the construction of the new hospital campus. The option agreement included a covenant that restricted the three lots to use solely for the construction of healthcare facilities. By its terms, the option agreement was binding upon St. Benedict's successors and assigns. St. Benedict's also required ABC to execute a restrictive covenant as against all other property in the PUD prohibiting the provision of healthcare services. In addition, the option agreement gave ABC an option to repurchase the three lots if St. Benedict's "does not commence construction of a healthcare facility on the Real Property within three years of its exercise of the option" for the same price St. Benedict's originally purchased the property. ABC recorded a Memorandum of Option Agreement identifying ABC and St. Benedict's as the parties, and specifically acknowledging that the option agreement was binding on the parties with regard to all three lots.

On October 3, 2011, St. Benedict's conveyed its lots to CAG without notice to ABC. Upon learning of the conveyance, counsel for ABC sent CAG a letter dated January 30, 2012, informing CAG of the healthcare restriction contained in the option agreement. Counsel for CAG responded on February 9, 2012, as follows:

> I was also asked to confirm that CAG is aware of the March 14, 2007 Option Agreement and does understand your client has taken certain positions with respect to that document. The fact that CAG is aware of your client's previous position should not be interpreted as a statement that CAG agrees with such positions.

Based on the uncertainty ABC perceived that CAG had created through the above correspondence, ABC filed a complaint for declaratory relief on May 11, 2012. ABC sought a declaration that under the restrictive covenant in the option agreement, only a "healthcare facility" could be constructed on the three lots CAG owns within the PUD.

CAG moved to dismiss the complaint on ripeness grounds. CAG's motion to dismiss argued that there was no present controversy for the Court to resolve, and therefore the case was not ripe. In support of its argument, CAG points to the lack of any allegation that it has used or even threatened to use the property for any purpose other than construction of a healthcare facility. In its reply brief, CAG raised the doctrine of merger as one potential defense to ABC's

---

[1] St. Alphonsus was included in the option agreement, but assigned all of its rights to the option to St. Benedict's.

declaratory judgment to demonstrate the waste of time and money that would occur if the parties were forced to litigate issues based on hypothetical facts. Following briefing and oral argument, the district court took the matter under advisement on July 27, 2012.

The district court agreed with CAG and granted its motion to dismiss on September 4, 2012. ABC timely appealed.

## II. ANALYSIS

### A. Standard of Review

"This Court reviews de novo a district court's dismissal of a complaint under Idaho Rule of Civil Procedure 12(b)(6)." *Brooksby v. Geico Gen. Ins. Co.*, 153 Idaho 546, 547, 286 P.3d 182, 183 (2012). After viewing all facts and inferences from the record in favor of the non-moving party, this Court then looks only at the pleadings to determine whether a claim for relief has been stated. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). "The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims." *Id.*

### B. Ripeness of ABC's declaratory judgment claim

ABC's request for relief is in the form of a declaratory judgment. Idaho courts have the power to declare the rights, status and legal relations of persons affected by contracts.[2] I.C. §§ 10-1201 & 1202. Breach of a contract is not required for the issuance of a declaratory judgment regarding a contract dispute. I.C. § 10-1203; *Utah Power & Light Co. v. Idaho Pub. Utils. Comm'n*, 112 Idaho 10, 12, 730 P.2d 930, 932 (1986) (noting that Idaho Code section § 10-1203 "provides for the issuance of a declaratory judgment in a contract dispute 'before or after there has been a breach.'") However, an actual or justiciable controversy is still a prerequisite to a declaratory judgment action; thus, courts are precluded "from deciding cases which are purely hypothetical or advisory." *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013) (quoting *Wylie v. Idaho Transp. Bd.*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011)). Idaho has adopted the constitutionally based federal justiciability standard. *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006). Ripeness is that part of justiciability that "asks whether there is any need for court action at the present time." *Id.* (quoting *Gibbons v.*

---

[2] Idaho Code section 10-1202 provides that "[a]ny person ... whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." I.C. § 10-1202.

*Cenarrusa*, 140 Idaho 316, 317, 92 P.3d 1063, 1064 (2002)). "The traditional ripeness doctrine requires a petitioner or plaintiff to prove 1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Paddison Scenic Props., Family Trust, L.C. v. Idaho Cnty.*, 153 Idaho 1, 4, 278 P.3d 403, 406 (2012) (quoting *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002)).

The district court held that ABC's declaratory judgment action was not ripe for adjudication because the controversy ABC alleged involves "uncertain or contingent future events that may not occur as anticipated or indeed may not occur at all." The court noted that ABC's complaint was void of any "threat, evidence or allegation that the property will not be developed in accordance with the specified definition of a healthcare facility."

On appeal, ABC argues that CAG's letter coupled with the arguments it put forward to the district court created a real and substantial controversy as to the validity of the restrictive covenant contained in the option agreement. ABC also claims that it is necessary to adjudicate this controversy now because the uncertainty caused by CAG's position as to the covenant's validity presently harms ABC's ability to market the remainder of its development property. Specifically, ABC can no longer make warranties of exclusivity, like the one made to CAG's predecessor, to future purchasers of property within the PUD because ABC is no longer sure what CAG will do with its property. In response, CAG argues that the district court correctly held that ABC's claim was not ripe because it is based on hypothetical facts that may never occur. CAG contends that because there are no allegations that CAG plans or ever planned to build anything other than a healthcare facility on its property, there is no real and substantial controversy, and so, no present need for adjudication. CAG also argues that this Court should not consider any arguments CAG made in its Reply Brief to the district court as establishing a controversy because courts are confined to the facts alleged in the pleadings when ruling on motions brought pursuant to I.R.C.P. 12(b)(6).

In this case, there is a definite and concrete issue ABC wants decided, but it has failed to demonstrate that an actual controversy exists. In order for there to be a justiciable controversy there must be more than a difference or dispute of a hypothetical or abstract character. *Davidson*, 143 Idaho at 620, 151 P.3d at 816. Accordingly, "a litigant seeking a declaratory judgment must demonstrate that an actual controversy exists and that the requested relief will provide actual relief, not merely potential relief." *Bettwieser*, 154 Idaho at 326–27, 297 P.3d at 1143–44. For

4

example, this Court has held that a declaratory judgment action concerning the legality of a proposed ordinance was not ripe until the proposed ordinance was passed by the voters. *Davidson*, 143 Idaho 616, 151 P.3d 812. "The substance of Davidson's proposed initiative will not be ripe for judicial review unless or until passage by the voters brings up the problem of enforcing a potentially invalid law. Until then, any judgment on the merits of this case would be an academic discussion on a hypothetical set of facts." *Id.* at 621, 151 P.3d at 817.

Similarly, in *Wylie v. Idaho Transp. Bd.*, this Court held that Wylie was not entitled to a declaratory judgment on his claim to invalidate an ordinance that limited his access to a state highway because no justiciable controversy existed. 151 Idaho at 31, 253 P.3d at 705. On the question of justiciability, this Court held that:

> Wylie has been unable to articulate how a judgment declaring the Ordinance invalid would provide him any relief. The Agreement clearly precludes direct access to SH 20-26 and the provisions of the Agreement are not dependent upon the Ordinance. Further, even if we were to declare the Ordinance invalid, ITD has denied Wylie's encroachment permit, which would still preclude his desired access.

*Id.* at 34, 253 P.3d at 708. In response to Wylie's argument that he would have an opportunity to petition the state for an access point if the court invalidated the ordinance, the Court stated that "a remote contingency is not sufficient to satisfy the requirements for a justiciable controversy." *Id.* In both *Davidson* and *Wylie*, no controversy had actually arisen and the alleged facts showed that one might never arise. Therefore, neither claim was ripe for judicial review.

In contrast, where the facts of the case presently call for court action, this Court has held that an actual controversy exists. For example, a challenge to a county ordinance that required state and federal agencies to comply with the county's land use plan was ripe despite testimony from county board members that they did not intend to enforce the ordinance. *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 913 P.2d 1141 (1996). This Court stated: "We will not speculate whether the board members will choose another form of enforcement or whether a new board will choose to enforce the ordinance by fines or penalties. The ordinance requires the plan to be enforced." *Id.* at 376, 913 P.2d at 1146. Thus, although the plaintiff had not yet suffered the harm, a controversy presently existed and so the claim was ripe for review.

Likewise, in *Schneider v. Howe*, 142 Idaho 767, 133 P.3d 1232 (2006), on appeal from an adverse ruling confirming the existence of an easement, the defendant claimed that the matter was not ripe because the plaintiff had not filed an application with the county to develop the

5

property subject to the alleged easement. However, the plaintiff in *Schneider* alleged that he intended to subdivide the property and that the easement afforded the only access. *Id.* at 773, 133 P.3d at 1238. He also alleged existing harm based upon the defendant's refusal to allow him to use the easement. *Id.* Given the plaintiff's present inability to use the easement and his allegations that he intended to subdivide the property, the Court held that delaying adjudication would add nothing material to the litigation.

Even where there is no immediately apparent damage, claims may be ripe for adjudication. In the Ninth Circuit case, *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005), plaintiff and defendant were parties to a long-term lease which provided for rent adjustment in the thirty-first and sixty-first years of the lease. *Robinson*, 394 F.3d at 668. The parties disagreed as to the interpretation of this provision, and when they renegotiated the lease they included this disagreement in a lease amendment. *Id.* When one of the parties tried to sell its interest, it could not because of the disagreement. *Id.* The Ninth Circuit agreed that their case was ripe for decision because there was "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 671. In that case, there was no question as to the presence of a disputed term in the contract. Indeed, the disagreement had been amended into the contract and actually prevented plaintiff's sale of its interest in the property. The only question was whether the controversy between the parties had "become sufficiently immediate, such that the district court has Article III jurisdiction to decide it." *Id.*

In this case, there is no clear contract dispute similar to the one in *Robinson*. CAG's letter stating that its "awareness should not be interpreted as a statement that CAG agrees with such positions" does not establish disagreement as to the covenant's validity. ABC argues that if CAG does not agree with ABC's position, the only conclusion that can be drawn is that CAG disagrees with it. However, that is but one conclusion to be drawn. CAG's letter simply refuses to go on the record as agreeing or disagreeing with ABC's interpretation. It does not mean CAG will challenge the provision or that CAG necessarily even disagrees, just that CAG does not want to presently acquiesce to ABC's interpretation.

ABC argues that it has been pushed to litigation by CAG, but that is hardly the case. ABC sought written confirmation from CAG that it agreed with its interpretation of the restrictive covenant. CAG had no obligation to give such confirmation, and its refusal does not

rise to a real and substantial conflict. In *Schneider*, the plaintiff had a plan to pave the easement and the defendant informed him that he was not even able to use the easement. 142 Idaho at 769-70, 133 P.3d at 1234-35. Even if the plaintiff had commenced no part of his plan to pave the easement, a clear conflict existed between him and the defendant as soon as the defendant told him he could not use the easement. Similarly, a clear dispute existed in *Robinson*. It was not merely an allegation that the parties likely would not agree on the meaning of the renegotiation term in the lease if the leasehold interest was ever sold, but that the parties presently did not agree on its meaning, had memorialized the disagreement, and the disagreement had actually prevented the sale of the leasehold. No similar facts exist here. ABC simply alleges that CAG likely disagrees with its interpretation of the restrictive covenant and this disagreement may affect its ability to market ABC's other properties. The district court was correct in finding that these facts were too hypothetical and contingent to establish a justiciable controversy.

ABC argues that even if the letter does not signal a clear contract dispute, the arguments CAG raised in its Reply Memorandum in Support of Motion to Dismiss filed with the district court is sufficient to establish a dispute as to the validity of the restrictive covenant. Arguments CAG made in response to ABC and in an attempt to support its argument that litigation of ABC's declaratory judgment claim was not only unnecessary, but would be costly and difficult, are not an appropriate consideration in determining the existence of a justiciable controversy. *See Taylor v. McNichols*, 149 Idaho 826, 833, 243 P.3d 642, 649 (2010) ("A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated."). Moreover, the arguments CAG previously put forth, considered in context, do not establish a justiciable controversy.

In its Reply Brief in support of its motion to dismiss, CAG raised the doctrine of merger as one potential defense to ABC's declaratory judgment. In doing so, CAG stated, "The point here is not to argue the merits of the merger question, but to point out that litigating complicated legal matters that may never need to be addressed is a waste of time, money, and judicial resources." Thus, the merger defense was only brought up in the first place to emphasize the waste of time and money that would occur if the parties were forced to litigate issues based on hypothetical facts.

7

We affirm the district court's decision that ABC has failed to establish the existence of a real and substantial controversy between itself and CAG over the validity of the restrictive covenant in the option agreement.

**C. Attorney Fees.**

Both ABC and CAG ask for attorney fees pursuant to paragraph 11 of the option agreement and Idaho Appellate Rules 40 and 41 and both concede that the prevailing party on appeal is entitled to attorney fees under these provisions. Because CAG is the prevailing party on appeal, it is entitled to attorney fees under the option agreement.

### III. CONCLUSION

We affirm the district court's dismissal of ABC's complaint and award CAG costs and attorney fees on appeal.

Justices EISMANN and HORTON, **CONCUR.**

J. JONES, Justice, specially concurring.

I fully concur in the Court's opinion. Although ABC cannot be faulted for having concerns about CAG's intentions, based on its 2/9/12 letter, that does not necessarily create a real and substantial controversy justifying a declaratory judgment action. After the action was filed, CAG may have stoked ABC's concerns by raising its "potential" merger defense. However, that issue was raised in a hypothetical sense and still did not produce a justiciable controversy.

In the event that CAG tries to dispose of the property in contravention of the restrictive covenant, ABC will have a genuine justiciable dispute to pursue in court and can at that time seek preliminary injunctive relief. If CAG then raises the merger defense, there will be an opportunity to squarely address it in the judicial process. At that time, the parties can present evidence on the question of whether the restrictive covenant was merged into the terms of the deed or whether it was a collateral stipulation. *See Fuller v. Callister*, 150 Idaho 848, 853, 252 P.3d. 1266, 1271 (2011). While each alleged collateral stipulation must be considered on its own merits, CAG's successful invocation of the attorney fee provision in the option agreement may complicate any contention that the option agreement was merged. ABC may well contend that CAG is judicially estopped from claiming merger of the restrictive covenant after receiving the benefit of the fee provision. However, considering such theoretical arguments at this time demonstrates the necessity for having an actual controversy at hand in order to pursue a

8

declaratory judgment action. It is best not to issue hypothetical decisions based on hypothetical claims or defenses.