**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49237**

| | | |
|---|---|---|
| A.C. & C.E. INVESTMENTS, INC., a California corporation, | ) ) ) | |
| Plaintiff-Appellant-Cross Respondent, | ) ) | **Twin Falls, August 2023 Term** |
| v. | ) ) ) | **Opinion filed: December 19, 2023** |
| EAGLE CREEK IRRIGATION COMPANY, an Idaho corporation, | ) ) ) ) | **Melanie Gagnepain, Clerk** |
| Defendant-Respondent-Cross Appellant. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned C. Williamson, District Judge.

The judgment of the district court is <u>affirmed</u>.

Kahle Becker, Attorney at Law, Boise, for Appellant-Cross Respondent, A.C. & C.E. Investments, Inc. J. Kahle Becker argued.

Lawson Laski Clark, PLLC, Ketchum, for Respondent-Cross Appellant, Eagle Creek Irrigation Company. Edward Lawson argued.

_____

MOELLER, Justice.

This case arises out of Eagle Creek Irrigation Company's ("Eagle Creek") amendments to its bylaws and articles of incorporation. Eagle Creek is a nonprofit mutual irrigation corporation that owns a water right. It delivers water to its shareholders who own land within its service area on a pro rata basis based on the number of shares each shareholder owns. A.C. & C.E. Investments, Inc. ("AC&CE"), is a shareholder of Eagle Creek, owning 15 capital shares.

Eagle Creek's original governing documents limited the total number of capital shares it could issue and provided that Eagle Creek would hold all the water rights it acquired "in trust" for the benefit of its shareholders. By majority vote of the shareholders, Eagle Creek amended and restated its governing documents in 2015. The updated governing documents included an increase

1

in the number of capital shares the corporation was authorized to issue but did not include the former trust language.

After Eagle Creek shareholders voted to approve the amendments, AC&CE brought suit challenging the shareholders' actions. Before the district court, AC&CE argued that Eagle Creek breached its fiduciary duty and sought a judgment declaring that the proposed amendments were void. Additionally, AC&CE requested that the district court reinstate the trust and decree that Eagle Creek is still the trustee. The district court ultimately granted summary judgment to Eagle Creek, concluding that (1) the complaint did not properly plead a derivative action, (2) AC&CE lacked standing to bring a direct claim because it had not suffered harm distinct from other shareholders, and (3) the amendments were validly adopted by a majority shareholder vote. Eagle Creek was awarded its costs, but the court denied its request for attorney fees.

AC&CE appealed the district court's decision granting summary judgment. Eagle Creek cross-appealed on the court's denial of its requested attorney fees. For the reasons stated below, we affirm the district court's result.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Eagle Creek is a nonprofit mutual irrigation corporation organized pursuant to the Idaho Nonprofit Corporation Act. I.C. §§ 30-30-101 to -1204. Eagle Creek owns Water Right No. 37-863E, by which it provides irrigation water to the shareholder landowners in its service area, known as the Eagle Creek Subdivision, in Blaine County, Idaho. AC&CE is a California corporation owning 15 acres of property within the Eagle Creek service area. It holds 15 shares of capital stock in Eagle Creek, which amounts to roughly 7.46 percent of Eagle Creek's total issued stock.

This is the second lawsuit between Eagle Creek and AC&CE to find its way to this Court. *See Eagle Creek Irrigation Co. v. A.C. & C.E. Invs., Inc.*, 165 Idaho 467, 447 P.3d 915 (2019) ("*Eagle Creek I*"). In the first action, the dispute centered on whether AC&CE's real property interest, which was obtained through a foreclosure sale, included the 15 shares of stock in Eagle Creek as appurtenant to the land. *Eagle Creek I*, 165 Idaho at 469, 447 P.3d at 917. After a comprehensive review of the "[h]istorical and legal background on water-delivery organizations and the Carey Act," *id.* at 474–76, 447 P.3d at 922–24, we concluded that "to determine the appurtenancy of a share in a mutual irrigation company, the [trial] court must consider the company's governing documents and how it acquired the water rights." *Eagle Creek I*, 165 Idaho

2

at 478, 447 P.3d at 926. Therefore, in *Eagle Creek I*, we ultimately concluded that "the district court erred in granting summary judgment to [AC&CE] because the district court did not look to Eagle Creek's governing documents." *Eagle Creek I*, 165 Idaho 482, 447 P.3d at 930. Accordingly, we vacated "the portion of the district court's final judgment which states that the 15 shares of the Eagle Creek stock were appurtenant to the Property." *Id.*

In December 2015, during the litigation that precipitated *Eagle Creek I*, but four years prior to this Court's decision, Eagle Creek amended its bylaws and articles of incorporation through a majority vote at a shareholder meeting. The amendments passed by a vote of 142 to 10—well over the majority vote required in the original articles of incorporation.[1]

The amendments changed the governing documents in two ways relevant to this appeal. First, the amendments doubled the number of authorized shares of capital stock from 207 to 414.[2] Second, the amendments eliminated a provision from the articles of incorporation that stated Eagle Creek would "hold all water rights acquired in Trust[.]" After Eagle Creek amended its governing documents, AC&CE moved to amend its complaint in the original action that precipitated *Eagle Creek I*. However, the district court did not permit AC&CE to add such claims at that stage in the litigation. Thus, AC&CE pursued its claims by filing a separate action.

In the complaint precipitating this appeal, AC&CE alleged that Eagle Creek breached its fiduciary duties to the shareholders by amending the bylaws in a way that terminated the trust. AC&CE also claimed that the way Eagle Creek amended the articles of incorporation and bylaws violated the terms of the trust. AC&CE sought a declaratory judgment, an injunction, appointment of a receiver, and "at least" $10,000 in damages. AC&CE later amended its complaint and removed the demand for monetary damages. AC&CE also sought to enjoin Eagle Creek's board of directors

---

[1] The vote of 142 to 10 reflects a majority of over 93 percent. We note that due to the previous dispute between AC&CE and Eagle Creek as to whether AC&CE's shares were appurtenant to the land, it appears that AC&CE did not participate in the vote. As part of the settlement agreement entered in the previous litigation, AC&CE was issued 15 shares which were to be dated as if they had been issued in 2011. Thus, even if *arguendo* we assume that AC&CE would have voted against the proposal with its 15 shares, the resolution still would have passed by a 142 to 25 vote, or roughly 85 percent of the vote.

[2] The original articles of incorporation state that the "authorized capital stock of this corporation shall be Two Hundred Thirty (230) shares . . . ." However, as we recognized in *Eagle Creek I*, "Article VI(3) of the articles states that there are 230 inches of water for distribution, whereas Article II of the Bylaws has the number 230 crossed out and '207' handwritten above the crossed-out 230 . . . ." 165 Idaho at 470 n.1, 447 P.3d at 918 n.1. Resolution of the number of authorized shares was not needed in *Eagle Creek I*. Thus, we simply recognized that "[u]nder the Articles and Bylaws, Eagle Creek would issue either 207 or 230 shares on a one-share-per-irrigable-acre basis." *Eagle Creek I*, 165 Idaho at 470, 447 P.3d at 918. AC&CE and the district court both characterize the initial authorization of capital shares as 207 shares. While we use 207 here, we express no opinion on any possible ambiguity or its resolution since resolution of this question is not needed to resolve the issues presented on appeal.

from further acts that might violate the terms of the trust. The litigation was hotly contested and featured four successive motions for summary judgment, resulting in four memorandum decisions and orders from the district court.

In November 2019, the district court issued a memorandum decision and order ("MDO I") granting partial summary judgment in favor of AC&CE. The district court concluded that "the undisputed record establishes that the Original Articles expressly form a trust, that AC&CE is a beneficiary of that trust and that Water Right 37-863E is the corpus of the trust." Accordingly, the district court granted AC&CE's motion for partial summary judgment.

After months of additional discovery, in June 2020, Eagle Creek moved for summary judgment again, this time alleging that AC&CE "lacked standing" to pursue derivative claims because it failed to comply with the pleading requirements. Additionally, Eagle Creek asserted that AC&CE's claims—based on alleged diminution in property value due to the termination of the trust—failed as direct claims because the alleged diminution in property value affected all shareholders; therefore, it must be addressed in a derivative action. The district court issued a second memorandum decision ("MDO II") on Eagle Creek's motion for summary judgment and AC&CE's motion to continue, granting the motion to continue because AC&CE had difficulty conducting depositions due to the COVID-19 pandemic. Accordingly, the district court deferred ruling on Eagle Creek's motion for summary judgment.

Shortly thereafter, the parties stipulated to allow AC&CE to file an amended complaint. In December 2020, AC&CE filed its first amended complaint, which did not include either a separate derivative claim against Eagle Creek or any amendments that would have made the existing claims compliant with Idaho Rule of Civil Procedure 78, which governs derivative actions. After Eagle Creek again filed a motion for summary judgment, the district court issued its third memorandum decision and order ("MDO III") in January 2021, where it concluded:

> [T]he original Articles of Incorporation were properly amended to eliminate a trust provision and to increase the number of authorized shares and [ ] the Board of Directors of [Eagle Creek] did not breach any fiduciary duty when it recommended amendment of those portions of the original Articles of Incorporation. However, the Court [found] there is a genuine dispute of material fact whether the elimination of language in the original Articles of Incorporation allowing for delivery of all or part of Water Right 37-863E outside of [Eagle Creek's] service area creates a reasonable rule or regulation and whether the board of directors' recommendation to eliminate such language is consistent with the applicable fiduciary standards for directors, thereby precluding summary judgment.

4

The district court also addressed Eagle Creek's argument that AC&CE's claims must be dismissed for lack of standing because its claims are derivative in nature, and the claims do not comply with the pleading requirements laid out in Rule 78 of the Idaho Rules of Civil Procedure or Idaho Code section 30-30-411. The district court agreed; however, the district court noted that notwithstanding AC&CE's assertion that it was not pursuing a derivative claim, there remained "a genuine dispute of material fact whether AC&CE [was] pursuing a direct action."

A few months later, AC&CE again moved for summary judgment, this time seeking, among other relief, a judgment in its favor on its claims and a declaration that the "Stevens[es'] Mitigation Agreement" was "*ultra vires* and void." The latter request concerned an agreement by Robert and Carol Stevens to mitigate their personal water use when they applied for a permit from the Idaho Department of Water Resources ("IDWR").[3] When IDWR later granted the Stevenses a license, it included a requirement that the Stevenses' portion of water remain in Eagle Creek.

Thereafter, the district court issued its fourth memorandum decision and order ("MDO IV"), concluding that (1) "[n]either the Original Articles [of Incorporation] nor the Amended Articles allow for delivery of water outside of the service area or permissible place of use of Water Right 37-863E[]"; (2) the amended articles did not violate Idaho law governing the distribution of water furnished among shareholders; (3) the Stevenses' Agreement did not allow for delivery outside of Eagle Creek's service area; (4) AC&CE's claim for breach of fiduciary duty failed because it had not alleged or proven that it has been damaged or is entitled to an equitable remedy; and (5) AC&CE did not have standing to bring a direct claim because it has not suffered a distinct harm from the other shareholders in Eagle Creek.

_____

[3] The district court explained the basis for this permit in more detail:

> "In 2013, Robert and Carol Stevens applied for a permit from the Idaho Department of Water Resources ('IDWR') proposing to use a ground water right in lieu of the Stevenses' proportionate share of their surface water right from part of Water Right 37-863E represented by their 14 shares in [Eagle Creek]." Ex. 52. The application specifically sought to divert 0.26 cfs/38.7 acre-feet for 12.9 acres. *Id.* The Stevenses requested the permit because the ditch delivering the Stevenses' water (the "High Ditch") was blocked by the construction of a house. *Id.* As mitigation for the ground water right, the Stevenses proposed not diverting their proportionate share of Water Right 37-863E represented by their 14 shares of [Eagle Creek], which was calculated to be a diversion of 0.41 cfs. *Id.* Instead, the Stevenses proposed to allocate 0.08 cfs of Water Right 37-863E to the High Ditch for the purpose of "wetting" the ditch and covering any conveyance loss in the High Ditch. *Id.* The Stevenses also proposed that the remainder of the diversion be allocated to non-use in Eagle Creek. Id. On July 14, 2014, IDWR granted the Stevenses' application for a permit (Permit No. 37-22779) allowing a ground water diversion of 0.26 cfs for 12.9 acres, mitigated by placing 0.08 cfs in the High Ditch to account for conveyance loss and a non-diversion of 0.26 cfs which was to remain in Eagle Creek."

(Citations omitted).

5

After the dismissal, Eagle Creek sought an award of attorney fees and costs under Idaho Code sections 12-120 and 12-121. AC&CE objected, asserting that Eagle Creek had only prevailed on some of its claims and that its fees were both "excessive" and "unrelated to this litigation." The district court denied Eagle Creek's request for statutory attorney fees, finding that each party prevailed in part. In the district court's view, AC&CE prevailed because MDO I concluded that the original articles of incorporation formed a trust, and that AC&CE was a beneficiary of that trust. However, Eagle Creek prevailed on its motion for summary judgment when the district court found that Eagle Creek properly amended the bylaws and articles of incorporation. Accordingly, the district court awarded Eagle Creek costs as a matter of right under I.R.C.P. 54(d)(1)(C) and discretionary costs under I.R.C.P. 54(d)(1)(D), totaling $17,036.72. AC&CE timely appealed. Eagle Creek timely cross-appealed the denial of its attorney fees.

## II. STANDARDS OF REVIEW

This Court reviews a grant of summary judgment de novo and employs the same standard of review used by the trial court in ruling on the motion for summary judgment. *United Heritage Prop. & Cas. Co. v. Zech*, 170 Idaho 764, 770, 516 P.3d 1035, 1041 (2022) (quoting *AED, Inc. v. KDC Invs.,* LLC, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)). Accordingly, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021) (quoting I.R.C.P. 56(a)). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007). "This Court applies a de novo standard of review to questions of law." *Ware v. City of Kendrick*, 168 Idaho 795, 798, 487 P.3d 730, 733 (2021) (quoting *Siercke v. Siercke*, 167 Idaho 709, 713, 476 P.3d 376, 380 (2020)).

Issues related to justiciability, such as mootness and standing, "are questions of law, over which this Court exercises free review." *Berglund v. Dix*, 170 Idaho 378, 384, 511 P.3d 260, 266 (2022) (citing *Frantz v. Osborn*, 167 Idaho 176, 179, 468 P.3d 306, 309 (2020)). Likewise, "the justiciability issues of ripeness and mootness may be freely reviewed." *State v. Manley*, 142 Idaho

338, 342, 127 P.3d 954, 958 (2005) (citing *Lake v. Newcomb,* 140 Idaho 190, 193, 90 P.3d 1272, 1275 (Ct. App. 2004)).

"This Court reviews a trial court's decision to award attorney fees and costs under an abuse of discretion standard." *Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 100, 529 P.3d 760, 765 (2023) (citing *In re Est. of Hirning*, 167 Idaho 669, 675, 475 P.3d 1191, 1197 (2020)). When reviewing a discretionary decision for an abuse of discretion, this Court determines whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### III. ANALYSIS

AC&CE's amended complaint included two counts: one seeking a declaratory judgment and the other alleging breach of fiduciary duty. The district court ultimately granted summary judgment to Eagle Creek on both counts. Pivotal to this appeal is the district court's conclusion that AC&CE had not properly pleaded a derivative action and had no standing to bring a direct action. Since the district court concluded there was a lack of standing, this appeal presents a question of justiciability. Also implicating justiciability on appeal is Eagle Creek's challenge to the district court's conclusion that this case presents a ripe controversy.

In addition to the threshold questions of justiciability, there is a separate question of whether this action was properly pleaded in the first instance. Idaho Code section 30-30-411 and Rule 78 of the Idaho Rules of Civil Procedure contain specific pleading requirements for derivative suits. The failure of a plaintiff to comply with these pleading requirements is grounds for dismissal. *See Kugler v. Nelson*, 160 Idaho 408, 414–15, 374 P.3d 571, 577–78 (2016) (applying the predecessor rule and statute); *Kerner v. Johnson*, 99 Idaho 433, 445, 583 P.2d 360, 372 (1978) (applying the predecessor rule and statute) (affirming that the plaintiff could not maintain either a derivative action or a class action). Thus, before reaching the merits, we must determine whether the issues presented on appeal are justiciable and properly pleaded under the Idaho Rules of Civil Procedure.

**A. AC&CE's claims regarding the amendment to increase the number of authorized capital shares issued is not ripe for adjudication because no such shares have been issued.**

7

In this appeal, AC&CE argues that there are essentially three actions by Eagle Creek that were improper: (1) removing the trust language from the articles of incorporation, (2) entering into a mitigation agreement with a shareholder and board member of Eagle Creek, and (3) increasing the number of authorized shares. We must first address whether these issues are ripe for adjudication. For the reasons explained here, we conclude that while the first two issues enumerated above present controversies ripe for adjudication, the third issue, concerning the increase in the number of authorized capital shares, is not ripe for adjudication based on the record before us.

"The doctrine of justiciability can be divided into several subcategories, including that of standing and ripeness. Ripeness is that part of justiciability that 'asks whether there is any need for court action at the present time.' " *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006) (internal citations omitted) (first citing *Weldon v. Bonner County Tax Coalition*, 124 Idaho 31, 36, 855 P.2d 868, 873 (1993); then quoting *Gibbons v. Cenarrusa*, 140 Idaho 316, 317, 92 P.3d 1063, 1064 (2002)). In other words, "[t]he ripeness doctrine concerns the timing of a suit and asks whether a case is brought too early.

"The purpose of the ripeness requirement is to prevent courts from entangling themselves in *purely abstract disagreements*." *State v. Manley*, 142 Idaho 338, 342, 127 P.3d 954, 958 (2005) (emphasis added) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). In determining ripeness, "[t]he traditional ripeness doctrine requires a petitioner or plaintiff to prove that (1) the case presents definite and concrete issues, (2) a real and substantial controversy exists, and (3) there is a present need for adjudication." *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002) (citing *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 376, 913 P.2d 1141, 1146 (1996)). Thus, "[i]n order for there to be a justiciable controversy there must be more than a difference or dispute of a hypothetical or abstract character." *ABC Agra, LLC v. Critical Access Grp., Inc.*, 156 Idaho 781, 784, 331 P.3d 523, 526 (2014) (citing *Davidson,* 143 Idaho at 620, 151 P.3d at 816). "Accordingly, 'a litigant . . . must demonstrate that an actual controversy exists and that the requested relief will provide actual relief, *not merely potential relief*.' " *Id.* (emphasis added) (quoting *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 326–27, 297 P.3d 1134, 1143–44 (2013)).

Looking to the first cause of action, we conclude that AC&CE's assertion that it was impermissible for the shareholders to remove the trust language from the original bylaws and

articles was ripe for the district court's adjudication. It posed more than a theoretical or potential controversy. Further, there was a present need to resolve whether the shareholders had impermissibly removed the trust language in order to evaluate the remaining claims. Therefore, the matter was ripe for adjudication.

As for the second cause of action, the allegations regarding the Stevenses' Mitigation Agreement, it was also ripe for adjudication. Eagle Creek's governing documents, both the original and the amended versions, limit the delivery of water to a designated service area. AC&CE alleges that the Stevenses' Mitigation Agreement violated this provision and requires delivery of water outside its service area. As mentioned above, the mitigation undertaken by the Stevenses was essentially to leave their share of the water in Eagle Creek. This proposal was made a condition of the license later issued by IDWR. Thus, the second cause of action also presents definite and concrete issues concerning a real and substantial controversy with a present need for adjudication. Accordingly, we conclude that the issues concerning the trust and the mitigation agreement are both ripe for declaratory relief.

However, this is not the case when it comes to the third cause of action: whether the amendment to increase the authorized shares of capital stock in Eagle Creek was a breach of its fiduciary duty to its shareholders. Notably, this claim was not raised in the context of a request for declaratory relief but as a separate cause of action for breach of fiduciary duty. Although the district court concluded this claim was ripe for adjudication, for the reasons discussed below we disagree. On appeal, AC&CE appears to only challenge Eagle Creek's ability to *issue* additional stock. However, the record reveals that no additional shares of stock have been issued. The shareholders currently own the same number of shares as they did prior to the alleged improper action by the board of directors. By approving the amendments, Eagle Creek shareholders have only increased the number of shares of capital stock that Eagle Creek is authorized to issue.

Capital stock is defined as "[t]he total number of shares of stock *that a corporation may issue* under its charter or articles of incorporation, including both common stock and preferred stock." *Stock: Capital Stock*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Since capital stock includes the total number of shares an entity *may issue*, capital stock includes both "issued stock" and "unissued stock." Issued stock is "[c]apital stock that has been *authorized and sold* to subscribers, but may be reacquired, such as treasury stock." *Stock: Issued Stock*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Whereas unissued stock is "[s]tock that is

authorized by the corporate charter but not yet distributed." *Stock: Unissued Stock*, Black's Law Dictionary (11th ed. 2019). Thus, Eagle Creek has not *issued* any additional shares of stock.

AC&CE frames its argument concerning the increase in capital stock in terms of dilution; i.e., it maintains that Eagle Creek cannot dilute its existing shareholders' water rights.[4] Specifically, AC&CE argues that: "[b]y the same reasoning, [Eagle Creek] cannot dilute its current shareholders' beneficial interests by issuing additional shares to third parties . . . ." However, there is no evidence that any shares have been diluted. While the capital stock the company is authorized to distribute has been increased, there has been no additional stock issued. Therefore, any claim of dilution is "a difference or dispute of a hypothetical or abstract character." *ABC Agra, LLC*, 156 Idaho at 784, 331 P.3d at 526 (citing *Davidson,* 143 Idaho at 620, 151 P.3d at 816).

Even AC&CE seems to recognize that this has yet to occur, theorizing in its brief that "[i]t is not difficult to *contemplate a scenario* whereby certain wealthy [Eagle Creek] shareholders desire to increase their proportionate share of water . . . and then set out to dilute AC&CE's proportionate share of water by purchasing a disproportionate amount of newly issued shares." (Emphasis added). AC&CE suggests that "a single shareholder *could conceivably* set out to purchase a majority stake in [Eagle Creek] and entirely control its operations." (Emphasis added). Importantly, at oral argument, AC&CE's counsel even conceded that "at this stage my clients have not per se lost a drop of water."

As mentioned above, "[i]n order for there to be a justiciable controversy there must be more than a difference or dispute of a hypothetical or abstract character." *ABC Agra, LLC*, 156 Idaho at 784, 331 P.3d at 526 (citing *Davidson,* 143 Idaho at 620, 151 P.3d at 816). Such a controversy is missing in this case. Just because the company has the ability to dilute its shares, does not mean that it will.

---

[4] Notably, AC&CE did not include an issues on appeal section in its brief as required by Rule 35 of the Idaho Rules of Appellate Procedure. Thus, this Court is left to ascertain the scope of its challenge here on appeal—and whether it is challenging the ability to *issue* or the act of *authorizing* the increase in the capital stock—from the remainder of AC&CE's brief. From the briefing and argument raised at oral argument, we construe its argument as challenging the ability of Eagle Creek to issue its stock. However, even if it challenged the authorization to increase the capital stock, there is still no standing here, because AC&CE has not established a concrete and particularized injury in fact by Eagle Creek. Instead, AC&CE only relies on conjectural or hypothetical scenarios of possible stock distribution. *See Reclaim Idaho v. Denney*, 169 Idaho 406, 422, 497 P.3d 160, 176 (2021) ("To satisfy the requirement of an injury in fact, one must allege or demonstrate' an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical.") (internal quotations omitted).

Dilution is a reality of business practice and often a necessary mechanism to raise needed capital. While the Idaho Business Corporation Act expressly provides for the election of preemption rights, it makes clear that "shareholders of a corporation do not have a preemptive right to acquire the corporation's unissued shares except to the extent the articles of incorporation so provide." I.C. § 30-29-630(a). We recognize that Idaho statutes concerning nonprofit corporations do not have a similar analogue; however, it seems the statutory authority for admission of new members is even broader.[5] The Idaho Nonprofit Corporation Act provides that "[e]xcept as provided in its articles or bylaws, a corporation may admit members for no consideration or for such consideration as is determined by the board, or by the articles of incorporation." I.C. § 30-30-402. Importantly, there is nothing in the Idaho Nonprofit Corporation Act which limits a nonprofit organization's ability to take on new members, absent such a provision in the articles or bylaws. *See* I.C. §§ 30-30-401, 30-30-202, 30-30-206, 30-30-302.

Should Eagle Creek's shareholders be concerned about such an event, the shareholders are free to add such protections to the company's governing documents. *See* I.C. §§ 30-30-202, 30-30-206, 30-30-302. Here, the governing documents contain no such protections. Instead, AC&CE took title subject to the governing documents freely entered into by its predecessors in interest; governing documents that do not foreclose the possibility of dilution. As we have said, "[f]reedom of contract is a fundamental concept underlying the law of contracts." *Jesse v. Lindsley*, 149 Idaho 70, 75, 233 P.3d 1, 6 (2008) (citing *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 499, 465 P.2d 107, 110 (1970)).

While it is unclear whether dilution alone can give rise to a claim, it must be stressed that no dilution has occurred here. Although AC&CE's dilution claim contains an embedded argument invoking Idaho constitutional protections involving continued use of water in this context, AC&CE proffers these constitutional protections without yet having its interest diluted or otherwise having its continued use of the water adversely affected. As AC&CE observes in its opening brief: while a single shareholder "*could conceivably* set out to purchase a majority stake in [Eagle Creek] and entirely control its operations," including the conceptual possibility of controlling water deliveries,

---

[5] As one example, the statue contemplates that a nonprofit corporation may "issue shares of stock instead of memberships pursuant to its articles of incorporation. . . ." I.C. § 30-30-202. The statute also explains that any reference to "members" must include "stockholder or shareholder, wherever and whenever those terms are used in [the Idaho Nonprofit Corporation Act]. . . ." I.C. § 30-30-103. Further, Idaho Code section 30-30-401 provides that the "articles or bylaws may establish criteria or procedures for admission of members." Thus, read together, the articles or bylaws may establish criteria or procedures for admission of stockholders or shareholders.

such an event has yet to occur. (Emphasis added). For these reasons, we express no opinion on the legitimacy of its embedded constitutional argument.

In sum, where no additional stock has been issued, nor additional shareholders added, AC&CE has not demonstrated "an actual controversy exists and that the requested relief will provide actual relief, *not merely potential relief*." *ABC Agra, LLC*, 156 Idaho at 784, 331 P.3d at 526 (emphasis added) (citing *Bettwieser*, 154 Idaho at 326–27, 297 P.3d at 1143–44). A breach of fiduciary duty claim based on the possibility of dilution in the future is not ripe for adjudication.

Although we have concluded that the district court erred in determining that this issue was ripe for adjudication, the court ultimately dismissed the claim on different grounds. Inasmuch as we reach the same result, albeit for different reasons, the outcome of the case was unaffected by this error. Thus, we affirm the district court's result.

### B. AC&CE's remaining claims fail both as derivative claims and as direct claims.

We now turn to AC&CE's remaining claims. This case involves two entities, one of which is a shareholder of the other. The shareholder, AC&CE, is challenging the validity of certain corporate actions made by Eagle Creek. Review of such challenges raises a question concerning the type of action brought by the shareholder: whether AC&CE's claims are brought as a derivative action or a direct action.

At the outset, we note that we are fully aware that AC&CE argues that it is only bringing a direct claim. In doing so, AC&CE seeks to invoke "[a] well-recognized exception to the rule that a shareholder must bring a derivative action." *Kugler v. Nelson*, 160 Idaho 408, 413, 374 P.3d 571, 576–77 (2016) (quoting *McCann v. McCann*, 152 Idaho 809, 814, 275 P.3d 824, 829 (2012) [hereinafter *McCann II* ]). However, the district court concluded that AC&CE's claims failed as both a derivative action and as a direct action, evaluating the claims first under the derivative pleading requirements and then later under the exception which permits a shareholder to bring direct claims in certain circumstances. While AC&CE strongly asserts that it is not bringing a derivative claim, it nevertheless argues in this appeal that the district court erred in concluding that it did not satisfy the pleading requirements for derivative actions set forth in the Idaho Rules of Civil Procedure. Thus, to fully address the issues raised by AC&CE, we must address the propriety of AC&CE's claims as both a derivative action and a direct action.

Importantly, the district court found that because AC&CE's claims were derivative in nature, they were not properly pleaded under Rule 78 of the Idaho Rules of Civil Procedure, which

12

sets forth the pleading requirements for a derivative action. The district court further concluded that AC&CE also failed to satisfy the requirements for bringing a direct action; therefore, it did not have standing to bring a direct claim.

While we typically address issues of standing at the starting gate, the question of standing has an embedded question concerning the type of action AC&CE is pursuing. At its most basic level, standing is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Standing*, Black's Law Dictionary (11th ed. 2019). In evaluating whether AC&CE has a right to make the legal claim it is asserting, we must first address the type of action which AC&CE brings. The right to make a claim is often dependent on the type of action being brought. Here, if the action satisfies the prerequisites and requirements set forth in the Idaho Rules of Civil Procedure for bringing a derivative action, AC&CE would have standing. However, if the action failed to meet the requirements for a derivative action, AC&CE would only have standing if its action falls within the narrow exception which permits certain direct claims. Accordingly, to fully address the issue of standing, we must address whether these are properly pleaded derivative claims. If this action fails as a derivative action, we must then proceed to address whether there is standing to bring a separate, direct action.

*1. AC&CE's remaining claims are derivative and have not been properly pleaded.*

As we have previously noted, "[a] derivative action is distinguishable from an individual action." *Kugler v. Nelson*, 160 Idaho 408, 413, 374 P.3d 571, 576 (2016). This distinction is necessary due to the unique circumstances presented when a shareholder sues a corporation:

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

*Id*. (emphasis omitted) (quoting *McCann II*, 152 Idaho at 814, 275 P.3d at 829). Idaho Rule of Civil Procedure 78 establishes the prerequisites and pleading requirements for bringing a derivative action:

> **(a) Prerequisites.** This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

13

**(b)  Pleading Requirements.** The complaint must be verified and must:

(1)   allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2)   allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3)   state with particularity:

> (A)   any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

> (B)   the reasons for not obtaining the action or not making the effort.

I.R.C.P. 78(a), (b).

The district court noted that "AC&CE candidly concedes that its action is not a derivative action." Yet, AC&CE still asserted that its amended complaint complies with Rule 78 of the Idaho Rules of Civil Procedure. The district court disagreed and concluded that AC&CE's amended complaint failed to meet the requirements of the rule:

> AC&CE contends that Paragraphs 24-30 and 46 of the First Amended Complaint satisfy the requirements of I.R.C.P. 78(b)(2). The [c]ourt disagrees. Those paragraphs certainly allege a number of complaints but they do not state with particularity any effort by AC&CE to obtain reformation of the Amended Articles from the Board of Directors or the [Eagle Creek] shareholders or the reasons for not obtaining the action or not making the effort. As such, even if it believed its actions were derivative, AC&CE would not be able to maintain derivative claims.

(Citations omitted). Although AC&CE's consistent position is that its claims are not derivative, it never directly challenges the district court's conclusion that its claims fail because it is a derivative claim. In its brief, AC&CE states: "Though it was not required to do so *and because this is not a derivative action,* AC&CE's original Complaint and First Amended Complaint satisfy the pleading requirements found in IRCP 78(b) to the extent it has any applicability to the claims plead." (Emphasis added; citations omitted). AC&CE maintains its position in its reply brief: "[t]his is not a derivative action." AC&CE suggests that Eagle Creek "prefers to treat this case as a derivative shareholder action because the body of corporate law it relies upon is extremely deferential to the actions of the favored group of shareholders who hold a majority stake in [Eagle Creek]." For the reasons set forth below, we disagree.

When an entity acts "beyond the scope of power allowed or granted by a corporate charter or by law . . . [,] it is said to act *ultra vires*." *Ultra Vires*, Black's Law Dictionary (11th ed. 2019).

14

Throughout both its opening brief and reply brief, AC&CE asserts that the mitigation agreement issue was based on "an *ultra vires* action" by Eagle Creek. While AC&CE does not expressly articulate the issues related to restating the government documents to "eliminate the trust" as an *ultra vires* action, AC&CE argues that "the district court erred in determining that the original articles of incorporation of [Eagle Creek] were properly amended to eliminate trust provisions and increase the number of authorized shares." By asserting that the articles of incorporation were improperly amended, AC&CE is asserting that Eagle Creek acted beyond the scope of power allowed by law. In other words, even though it does not expressly frame its argument as such, AC&CE is asserting that Eagle Creek acted *ultra vires*. Thus, we conclude that AC&CE's remaining claims rest on the *ultra vires* doctrine.

Importantly, while Idaho Code permits a shareholder to challenge the validity of a corporate action, the action must be pursued through a derivative proceeding:

> *ULTRA VIRES*. (1) Except as provided in subsection (2) of this section, the validity of corporate action *may not be challenged on the ground that the corporation lacks or lacked power to act*.
>
> (2) A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. *The proceeding may be brought* by a director, or *by a member or members in a derivative proceeding.*

I.C. § 30-30-304 (emphasis added). Thus, to challenge Eagle Creek's corporate actions before the district court, AC&CE was required to (1) bring its claim as a derivative action and (2) comply with the requirements of Rule 78. We conclude that AC&CE did not comply with either requirement.

To ensure that a derivative action adequately represents the interest of other shareholders, Rule 78(a) states that the "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." I.R.C.P. 78(a). Here, the record demonstrates that Eagle Creek organized a committee to investigate the claims asserted by AC&CE. A report issued by the Special Litigation Committee of Eagle Creek Irrigation Company determined that no other shareholder supported AC&CE's claims. The district court noted the following undisputed facts in its MDO IV:

> 23. On May 11, 2016, the [Eagle Creek] Board formed a Special Litigation Committee by Action by Unanimous Consent in Writing of the Board of Directors

15

> in Lieu of a Meeting. The [Eagle Creek] Board took such action to: Treat the proposed amended counterclaim as a demand to rectify the Derivative Claims and to form a Special Litigation Committee of the Board ("Special Litigation Committee") to investigate and evaluate the Derivative Claims and allegations asserted in the Lawsuit and to make a determination as to how the Corporation should proceed with respect to the Lawsuit and the Derivative claims and allegations asserted therein and to prepare a report, and take such other actions as the Special Litigation Committee deems appropriate.
>
> . . . .
>
> 25. On August 30, 2016, the Special Litigation Committee issued a Report of The Special Litigation Committee of Eagle Creek Irrigation Company ("Committee Report").

(Capitalization in original; internal record citations omitted). The district court also noted that the special litigation committee's report concluded that "[n]o other shareholder supports Claimant's Derivative Claims or desires to have the Amendments revoked[]" and that it was "not in the best interests of the Company to pursue its Derivative Claims."

AC&CE takes exception to the Special Litigation Committee's report. It argues that both the committee and its report "were window dressing to seek forgiveness for an otherwise unlawful act." However, beyond pointing to a deposition where one of the committee members indicates she familiarized herself with the conclusion only by reading the report, AC&CE does not point to anything in the record to undermine two important conclusions from the committee's report: (1) that "[n]o other shareholder supports Claimant's Derivative Claims or desires to have the Amendments revoked" and (2) it was the prevailing view, if not unanimous, of the other shareholders that it was "not in the best interests of the Company to pursue its Derivative Claims." (Capitalization in original). Therefore, based on the record in this appeal, AC&CE's amended complaint does not satisfy Rule 78(a)'s requirement that the derivative action adequately represent the interests of the other shareholders.

Ultimately, AC&CE's amended complaint also fails to comply with the pleading requirements in Rule 78(b). First, AC&CE never expressly alleges that it was a *shareholder* at the time of the complained of transaction. Instead, it notes that a judgment in a previous action required the issuance of stock to AC&CE dated September 8, 2011. However, in the subsequent line, instead of alleging that it was a shareholder, AC&CE alleged that "[e]ver since September 8, 2011, AC&CE has been *Beneficiary of the Trust* and entitled to the performance of fiduciary duties by [Eagle Creek] as Trustee, including, but not limited to, good faith, fair dealing, and full disclosure."

16

(Emphasis added). Later allegations include that "[i]n November and December 2015, [Eagle Creek] did not recognize AC&CE as Beneficiary under the Trust or as shareholder. AC&CE has never given consent or approved the actions of [Eagle Creek] or the termination of the Trust." While much of the amended complaint focuses on trust allegations, the amended complaint never alleges that AC&CE was "a shareholder or member at the time of the transaction complained of." Thus, the amended complaint failed. I.R.C.P. Rule 78(b)(1).

Moreover, the amended complaint does not contain an allegation that the action "is not a collusive one to confer jurisdiction that the court would otherwise lack . . . ." I.R.C.P. 78(b)(2). Absent such an allegation, the amended complaint fails. I.R.C.P. Rule 78(b)(2). Likewise, the amended complaint does not detail either (1) the efforts by AC&CE "to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members[,]" or (2) the reasons for AC&CE not obtaining the action or not making the effort. The absence of any such allegations begets a wholesale failure to comply with Rule 78(b)(3). For these reasons, we conclude that the district court did not err in determining that the amended complaint failed to comply with the requirements of Rule 78.

2. *AC&CE's claims do not survive as direct claims because AC&CE does not have standing to bring the claims raised in its complaint.*

While we have fully explained how AC&CE's claims fail to comply with Rule 78 as derivative claims, AC&CE has consistently maintained that its claims are direct claims. Although Idaho recognizes an exception to the derivative action requirement in closely held corporations, in such an instance a plaintiff must demonstrate a distinct harm or a breach of a special duty. *See Kugler v. Nelson*, 160 Idaho 408, 413–14, 374 P.3d 571, 576–77 (2016). For the reasons explained below, we conclude that AC&CE has demonstrated neither a distinct harm nor a breach of a special duty. Absent such a showing, we agree with the district court's conclusion that AC&CE does not have standing to bring its claim as a direct action.

When reviewing issues of standing, "Idaho has adopted the constitutionally based federal justiciability standard." *ABC Agra, LLC*, 156 Idaho at 783, 331 P.3d at 525 (citing *Davidson*, 143 Idaho at 620, 151 P.3d at 816). "Under the traditional standing analysis, the plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a like[lihood] that the injury will be redressed by a favorable decision."

17

*Tucker v. State*, 162 Idaho 11, 19, 394 P.3d 54, 62 (2017) (alteration in original; internal quotations omitted) (citing *State v. Philip Morris*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)).

We have repeatedly held that it is not enough to simply allege an injury—the injury must be a "distinct palpable injury." *Gifford v. W. Ada Joint Sch. Dist. #2,* 169 Idaho 577, 584, 498 P.3d 1206, 1213 (2021); *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194; *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002); *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). For an injury to be distinct and palpable, the petitioner's injury must be different from the injury sustained by other members of the public or group; it cannot be a generalized grievance. *See Miles*, 116 Idaho at 641, 778 P.2d at 763 (quoting *Warth v. Seldin*, 442 U.S. 490, 499 (1975)). "To satisfy the requirement of an injury in fact, one must allege or demonstrate an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Reclaim Idaho v. Denney*, 169 Idaho 406, 422, 497 P.3d 160, 176 (2021). (internal quotations and citation omitted).

While a plaintiff may allege an injury, this Court has also explained that "mere allegations are not sufficient, and the party invoking the court's jurisdiction must demonstrate facts supporting this allegation*." Philip Morris, Inc.*, 158 Idaho at 882, 354 P.3d at 195. As we held in *Philip Morris*: "[the] often repeated . . . 'allege or demonstrate' standard. . . is an incomplete statement of the requirements for standing. Consistent with the federal standard, *Young* also holds that standing requires a *showing* of a distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct." *Id*. at 881, 354 P.3d at 194 (emphasis in original) (citing *Young*, 137 Idaho at 104, 44 P.3d at 1159).

Injury plays a key role in this Court's recognized exception to the general rule requiring a shareholder to bring a derivative suit: "in a closely held corporation a minority shareholder may bring a direct action, rather than a derivative action, if the shareholder alleges *harm to himself distinct from that suffered by other shareholders of the corporation or breach of a special duty owed by the defendant to the shareholder*." *Kugler*, 160 Idaho at 413–14, 374 P.3d at 576–77 (emphasis in original) (quoting *McCann II*, 152 Idaho at 815, 275 P.3d at 830); *see also Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D. 1991). This position is consistent with our standing requirements which demand a "distinct, palpable injury." *See Reclaim Idaho*, 169 Idaho at 422–23, 497 P.3d at 176–77; *Young*, 137 Idaho at 104, 44 P.3d at 1159; *Miles*, 116 Idaho at 641, 778 P.2d at 763. Thus, we must also decide whether there has been an injury distinct from

other shareholders or a breach of a special duty owed to AC&CE. As explained below, we conclude that AC&CE's only ripe claim—breach of fiduciary duty—equally affects all shareholders. Accordingly, we conclude that AC&CE has not suffered "harm to [itself] distinct from that suffered by other shareholders of the corporation or breach of a special duty owed by the defendant to the shareholder." *Kugler*, 160 Idaho at 413–14, 374 P.3d at 576–77.

AC&CE attempts to frame its interest in its share of the water right as being different from all other shareholders. AC&CE points to the Enright Agreement, made between Eagle Creek and AC&CE's predecessor in interest, as giving it a "unique status" among the shareholders. Specifically in its opening brief, AC&CE argues that "AC&CE pursued the equitable remedy of reformation of [Eagle Creek's] governing documents to reinstate a trust and to unwind the Stevens[es'] Mitigation Agreement." This is important, according to AC&CE, because it "occupies *a unique status as a shareholder entitled to 7% of Eagle Creek's water available for distribution due to the Enright Agreement*." (Emphasis added). We disagree. AC&CE seems to take the position that it is contractually guaranteed seven percent of the water available for distribution. However, when all the provisions of the Enright Agreement are read in harmony, it is clear that the agreement only grants a pro rata distribution of water rights and does not purport to guarantee seven percent of the water available for delivery.

For example, Section 1 of the Enright Agreement provides:

The Company hereby grants Enright permission to divert water from Eagle Creek *in an amount equal to his pro rata portion of the water right held by the Company*. The parties acknowledge and agree that Enright is the owner and holder of fifteen (15) shares of the capital stock of the Company, which *would* entitle Enright to divert *approximately* seven percent (7%) of the total water *available for delivery* to the Company.

(Emphasis added). The first sentence is the actual, operative grant, which grants permission to divert water in amounts "equal to [its] pro rata portion of the water right held by the Company." The second sentence then operates as an acknowledgement of the current ownership and the corresponding amount of water for delivery. AC&CE's position that the second sentence contractually guarantees seven percent would render the first sentence meaningless.

Further supporting this position is the recital at the beginning of the agreement, which indicates that the agreement was made pursuant to and consistent with the bylaws of Eagle Creek and was not an attempt to bestow a unique status or special preference to an individual shareholder in a manner not provided for in the bylaws. Specifically, the recitals indicate that:

WHEREAS the *Bylaws of the Company require that a shareholder obtain Company approval* of diversion construction plans prior to commencing construction thereof; and

WHEREAS, *Enright is shareholder of the Company, and has applied to the Company for permission to divert water* from Eagle Creek at a point located on real property owned by Enright described in Exhibit "A" attached hereto; and

WHEREAS, the Company is willing to *grant Enright permission* for such diversion on the terms and conditions hereinafter set forth.

(Emphasis added). Read in harmony, it is clear that this agreement was made *pursuant to* the bylaws in the manner prescribed by the bylaws. The agreement does not grant AC&CE a "unique status" different from other shareholders; it merely confirms its right to a prorated share based on its stock ownership. Thus, all shareholders, including AC&CE, are equally affected by the decisions and actions of Eagle Creek, its board, and its shareholders regarding the mitigation agreement.

Additionally, notwithstanding the lack of a unique status among shareholders, AC&CE's claims are doomed on standing grounds due to the lack of any actual injury. As previously noted, AC&CE's attorney conceded at oral argument: "at this stage my clients have not per se lost a drop of water." Absent the loss of even a drop, there is no injury at all, let alone a distinct and palpable one. Therefore, we conclude that AC&CE does not have standing to bring a direct action on its breach of fiduciary duty claim because AC&CE has suffered neither a harm distinct from other shareholders nor an injury. Accordingly, we affirm the district court's grant of summary judgment on the remaining claims.

**C. The district court did not abuse its discretion in declining to award Eagle Creek its attorney fees below.**

Eagle Creek has cross-appealed, maintaining that the district court erred in declining to award it attorney fees under Idaho Code sections 12-120(3) or 12-121. We will address each statute in turn.

Concerning Eagle Creek's request for attorney fees under Idaho Code section 12-120(3), the district court denied its request because it concluded that a "commercial transaction" was not integral to the claims in this case. Eagle Creek disputes this conclusion and argues that a commercial transaction was "integral to [AC&CE's] claims."

As we have said, "[t]here are 'two stages of analysis to determine whether a prevailing party could avail itself of I.C. § 12-120(3): (1) there must be a commercial transaction that is

20

integral to the *claim*; and (2) the commercial transaction must be the basis upon which recovery is sought.' " *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, 663, 516 P.3d 73, 87 (2022) (emphasis in original) (citing *Great Plains Equip., Inc. v. Northwest Pipeline Corp.,* 136 Idaho 466, 471, 771, 36 P.3d 218, 223 (2001)).

Here, the amended complaint included two counts. First, AC&CE sought a declaratory judgment essentially asking the district court to declare that the trust language in the original governing documents still existed and had not been terminated by the amendments to the articles of incorporation. Second, AC&CE proffered a breach of fiduciary duty claim based on the alleged violation of the purported trustee's fiduciary duties to the purported beneficiaries—duties based on the existence of the trust.

Eagle Creek asserts that "the commercial transactions that were integral to [AC&CE's] claims against Eagle Creek were the Original Articles and Original Bylaws as well as the Amended Articles and Amended Bylaws." Even if we assume *arguendo* that this were true, it does not establish that a commercial transaction was the basis upon which recovery was sought. *See Breckenridge Prop. Fund 2016, LLC*, 170 Idaho at 663, 516 P.3d at 87. Rather, the former trust and the fiduciary duties flowing from it were the basis upon which recovery was sought by AC&CE. Accordingly, we affirm the district court's conclusion there was no commercial transaction between the parties that gave rise to this litigation and conclude that the district court did not abuse its discretion in denying attorney fees under Idaho Code section 12-120(3) on that basis.

Eagle Creek also cross-appeals the district court's denial of attorney fees under Idaho Code section 12-121. As we have said, "[a]n award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Sullivan v. BitterSweet Ranch, LLC*, ___ Idaho ___, 536 P.3d 867, 872 (2023) (quoting *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 676, 434 P.3d 1275, 1282 (2019)). When this Court reviews a discretionary decision of the district court for an abuse of discretion, we determine whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Eagle Creek argues on appeal that the district court erred by concluding that each party had prevailed in part. It maintains that "[a] review of the entire case, however, shows that Eagle Creek was clearly the prevailing party." However, the record is also clear that the district court did not decline to award attorney fees on the basis of who prevailed. Instead, after deciding that each party prevailed in part, the district court determined that attorney fees were not warranted under Idaho Code section 12-121 because the claims had not been brought, pursued, or defended frivolously, unreasonably, or without foundation. Specifically, the district court concluded:

> The [c]ourt does not find that AC&CE brought, pursued or defended frivolously, unreasonably or without foundation. The claims in Count I relating to the existence of a trust in the Original Articles of Incorporation, the identification of AC&CE as a beneficiary of that trust and the identification of Water Right 37-863E as the corpus of the trust were originally brought before the issuance of the opinion in Eagle Creek I. There was a need to first seek the declarations in Count I relating to the existence of a trust in the Original Articles of Incorporation, the identification of AC&CE as a beneficiary of that trust and the identification of Water Right 37-863E as the corpus of the trust before addressing the pivotal claim in Count I relating to the authority to amend the Original Articles of Incorporation. Considering the Court agreed with AC&CE's claims, the Court easily finds that AC&CE did not bring these claims frivolously, unreasonably or without foundation. The remaining claims addressed in the Third and Fourth Memorandum Decisions involved novel issues governed by water, contract, corporate, trust and constitutional law. At the end of its analysis, the Court found that ECIC was authorized under Article VII of the Original Articles of Incorporation to amend the articles. Considering the parties did not provide clear on point authority involving the remaining claims, the Court finds that AC&CE did not bring the claims frivolously, unreasonably or without foundation.

In its cross-appeal, Eagle Creek makes the conclusory assertions that "AC&CE did not have a good faith basis for filing a lawsuit against Eagle Creek[,]" and that AC&CE was on a fishing expedition. This is not supported by the record. As the district court noted, there was an initial need to seek the declaratory judgment related to the alleged trust central to the claim below—which the district court granted in AC&CE's favor. The district court also noted that the remaining claims presented complex legal issues for which there was no clear legal authority on point. It also must be emphasized that this case was resolved over four memorandum decisions—the first was granted in part in favor of AC&CE and, in the third, the district court concluded there was still a genuine issue of material fact.

Taken together, we conclude that Eagle Creek has not established that the district court abused its discretion in concluding that AC&CE's civil action was not brought "frivolously,

22

unreasonably or without foundation." Rather, the record indicates the opposite: the district court properly recognized and exercised its discretion, acted within the boundaries of its discretion and consistent with legal standards. Therefore, we cannot say that the district court abused its discretion in denying attorney fees to Eagle Creek below. Accordingly, the district court's denial of attorney fees under Idaho Code section 12-121 is affirmed.

**D. Eagle Creek is not entitled to attorney fees on appeal since it did not prevail in its cross-appeal.**

Eagle Creek seeks attorney fees on appeal pursuant to a variety of statutes, including Idaho Code section 12-121. "Under section 12-121, we award attorney fees to the prevailing party, as a matter of discretion, if we find an appeal was 'pursued, defended, or brought frivolously, unreasonably, or without foundation.' " *Asher v. McMillan*, 169 Idaho 701, 711, 503 P.3d 172, 182 (2021) (citing *Idaho Military Hist. Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632–33, 329 P.3d 1072, 1080–81 (2014)). In exercising this discretion, "[w]e apply a '[ ] holistic view to examine whether the non-prevailing party argued the issues in good faith or acted without a reasonable basis in fact or law.' " *Id.* (second alteration in original) (citing *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 468 P.3d 239, 253 (2020)).

However, we have also made clear that "[w]here a party loses on its cross-appeal, it is not a prevailing party." *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 274, 483 P.3d 313, 331 (2021) (citing *Tapadeera v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012) ("a respondent should carefully consider whether to file a cross-appeal because losing the cross-appeal may result in not being able to recover attorney fees incurred in defending the appeal")). Just as in *Knudsen*, Eagle Creek "prevailed on the issues [the appellant] appealed to this Court, it did not prevail with respect to the attorney[ ] fees issue it cross-appealed." *Id.* Having concluded that Eagle Creek has not prevailed in its cross-appeal, we must also conclude that Eagle Creek is not the prevailing party. Accordingly, Eagle Creek is not entitled to attorney fees on appeal. *See id.*

## IV. CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment to Eagle Creek. While the district court erred in concluding that AC&CE's breach of fiduciary duty claim for increasing the number of authorized capital shares was ripe for adjudication, we affirm because we reach the same result, albeit for different reasons. Regarding Eagle Creek's cross-

appeal, we affirm the district court's denial of attorney fees below. Eagle Creek's request for costs and attorney fees on appeal is denied.

Chief Justice BEVAN, Justices STEGNER, ZAHN, and Justice Pro Tem SIMPSON **CONCUR.**